UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| MARY LOU WENDELL | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action Docket No. 2:15-cv-00412-JHR |
| | ) | |
| CYNTHIA RUMERY-TAYLOR | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**DEFENDANT CYNTHIA RUMERY-TAYLOR'S TRIAL BRIEF**

**I.   FACTUAL STATEMENT**

This case arises from the alleged use of physical force by Defendant Cynthia Rumery-Taylor, a police officer for the City of Portland, in connection with Plaintiff Mary Lou Wendell's arrest on October 10, 2014 on Peaks Island.  At the time of the arrest, Plaintiff and her now ex-husband, Arn Pearson ("Mr. Pearson") were going through a contentious divorce and custody dispute regarding their three minor children.  Mr. Pearson had previously served Plaintiff with a Criminal Trespass Notice on December 13, 2013 because of Plaintiff's repeated trespasses onto his property on Peak's Island.

On the evening of October 10, 2014, Mr. Pearson complained to Officer Rumery-Taylor that Plaintiff reportedly violated the Criminal Trespass Notice by walking onto his porch and opening Mr. Pearson's front door to convince their son Ben to go watch a movie at Plaintiff's residence.  Mr. Pearson asked that Plaintiff be criminally charged for her trespass.  He also advised Officer Rumery-Taylor that he might require her assistance later that evening if he needed to go to Plaintiff's residence to see about his son's return home.  Later in the evening, when Plaintiff failed to respond to Mr. Pearson's text messages asking about Ben's return, Mr.

Pearson requested that Officer Rumery-Taylor accompany him to Plaintiff's house so he could determine whether his son would be returning that evening.

Upon arrival at Plaintiff's residence, it appeared that everyone was asleep so Officer Rumery-Taylor and Mr. Pearson decided to leave.  As they were walking past a small out-building in leaving the property, Plaintiff and her boyfriend, Don Shall ("Mr. Shall") emerged from the out-building and confronted Officer Rumery-Taylor and Mr. Pearson, demanding to know why they were on the property. Officer Rumery-Taylor attempted to explain that they had come to see if Ben was returning to Mr. Pearson's house that evening. Plaintiff and Mr. Shall were irate, yelling at them to leave the property.  Plaintiff's behavior escalated as Officer Rumery-Taylor also tried to explain to her that Mr. Pearson complained that Plaintiff had violated the Criminal Trespass Notice earlier that evening and she needed to give her a summons for Criminal Trespass. Plaintiff continued to yell and refuse to listen and then pushed past Officer Rumery-Taylor in an attempt to go back into the out-building.  At that point, Officer Rumery-Taylor told Plaintiff that she was under arrest.  Plaintiff screamed hysterically, pushed past Officer Rumery-Taylor and ran toward the main residence.

Officer Rumery-Taylor pursued Plaintiff into the residence.  Mr. Shall followed them into the residence and was attempting to convince Plaintiff to cooperate.  Plaintiff ran into the bathroom and attempted to shut the bathroom door on Officer Rumery-Taylor, but Officer Rumery-Taylor was able to open it and again told Plaintiff that she was under arrest. Plaintiff resisted and refused to give up her arms for handcuffing.  Officer Rumery-Taylor displayed her Taser in an attempt to gain compliance.  Plaintiff stopped fighting momentarily and Officer Rumery-Taylor was able to handcuff her.

Once outside the residence, Plaintiff continued to resist as Officer Rumery-Taylor attempted to walk Plaintiff toward the police cruiser.  As they approached the outbuilding, Plaintiff began screaming for her kids to come help her and pulled away from Officer Rumery-Taylor.  Plaintiff continued to resist and then threw herself down onto her knees, still screaming for her children.  All three children came running out of the building and two of the children, Molly and Ben, attacked Officer Rumery-Taylor, punching and kicking her.  Shortly thereafter, three neighbors came to the scene and tried to control the children and help get Plaintiff into the cruiser.  Ben punched one of the neighbors, Chelsea Kamp in the face.  Ben also picked up a tree branch and was swinging it at Officer Rumery-Taylor.  With the help of the other two neighbors, Kyle Green and John Kamp, Officer Rumery-Taylor eventually was able to get Plaintiff into the cruiser and transport her to the fire boat to await transport to the main land.

Plaintiff was arrested for, *inter alia*, refusing to submit to detention or arrest and criminal trespass.  The charges against Plaintiff were filed and eventually dismissed.  Plaintiff sued Officer Rumery-Taylor for false arrest and the use of excessive force in violation of her federal constitutional rights.  Plaintiff also brought claims against the Portland Police Department and the City of Portland on a municipal liability theory.  Plaintiff subsequently voluntarily dismissed her claim for false arrest against Officer Rumery-Taylor and all of her municipal liability claims against the Portland Police Department and the City of Portland.  Plaintiff's sole remaining claim is her excessive force claim against Officer Rumery-Taylor.  Plaintiff alleges that Officer Rumery-Taylor aggressively pressed her up against a wall while they were in the bathroom, hurting her.  Plaintiff also alleges that Officer Rumery-Taylor pushed Plaintiff to the ground.  Plaintiff further alleges that the handcuffs were too tight.  Plaintiff further alleges that Officer Rumery-Taylor authorized a neighbor to pick her up and throw her into the cruiser, hitting her

3

head on the other side of the door. Plaintiff also alleges that she suffered severe emotional

trauma and seeks punitive damages.  Defendant disputes Plaintiff's allegations and contends that

any force used was reasonable and necessary to overcome Plaintiff's resistance to being taken

into lawful custody, and that any alleged injuries or were inadvertent and caused by Plaintiff's

own actions.

## II.  CONTROVERTED POINTS OF LAW

### A.  EXCESSIVE FORCE

The only claim remaining for trial is Plaintiff's excessive force claim against Officer

Rumery-Taylor.  The parties have stipulated that Plaintiff is not contesting the lawfulness of her

arrest.  *See* Stipulation for Trial (Doc. No. 40). Plaintiff's claim that Officer Rumery-Taylor

unlawfully used excessive force during her arrest must be analyzed under the Fourth

Amendment's "objectively reasonable" test.  *Graham v. Connor*, 490 U.S. 386, 394-96 (1989).

With the right to arrest comes the right to use a reasonable amount of force to secure the arrestee

and take him or her into custody.  *Id*. at 396 ("Our Fourth Amendment jurisprudence has long

recognized that the right to make an arrest or investigatory stop necessarily carries with it the

right to use some degree of physical coercion or threat thereof to effect it."); *see also Covillion v.

Alsop*, 145 F. Supp. 2d 75, 79 (D. Me. 2001) ("Police officers are permitted to use force to arrest

a person, so long as the force is objectively reasonable under the totality of the circumstances.").

In assessing whether force used was unreasonable, the officer's actions must be judged with

"careful attention to the facts and circumstances of each particular case, including the severity of

the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or

others, and whether he is actively resisting arrest or attempting to evade arrest by flight."

*Graham* at 396; *see also Jennings v. Jones,* 499 F3d 2, 11 (1st Cir. 2007).

In order to prevail on her Fourth Amendment claim, Plaintiff must establish that the officer's actions in taking her into custody were unreasonable in light of the circumstances and the facts known to the officer at the time.  *See Calvi v. Knox Cty.*, 470 F.3d 422, 428 (1st Cir. 2006); *Estate of Bennett v. Wainwright*, 548 F.3d 155, 175 (1st Cir. 2008) ("[T]he reasonableness of an officer's use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." (citations omitted). Moreover, the court must keep in mind that "not every push or shove rises to the level of a constitutional violation." *Graham*, 490 U.S. at 396.  The "calculus of reasonableness must embody  allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."  *Id.* at 396-97; *Calvi*, 470 F.3d at 428 ("Police work is often carried out in fast-moving and poorly defined situations, so it is especially unfair to judge an officer's actions in hindsight.").

As soon as Officer Rumery-Taylor encountered Plaintiff on the night of October 10, 2014, Plaintiff was confrontational and aggressive, yelling at Officer Rumery-Taylor and refusing to listen or submit to Officer Rumery-Taylor's attempts to explain the criminal trespass order to Plaintiff.  Once Officer Rumery-Taylor told Plaintiff that she was under arrest, Plaintiff immediately fled and refused the officer's commands to stop and submit.  Plaintiff continued to resist handcuffing once inside the residence, trying to shut the bathroom door on Officer Rumery-Taylor and refusing to give up her arms.  These circumstances, including Plaintiff fleeing from the officer and her resistance to being taken into custody gave Officer Rumery-Taylor the right to use a reasonable degree of force to overcome that resistance.  Placing Plaintiff

against a wall for handcuffing is a standard police practice for taking an unruly suspect into custody.  *See Fernandez-Salicrup v. Figueroa-Sancha*, 790 F.3d 312, 326-27 (1st Cir. 2015) (finding no Fourth Amendment violation when officer shoved an arrestee, a minor student, face-first against wall and pulled her arm, injuring her in the process).

When brought outside of the residence, Plaintiff continued to resist and threw herself on the ground.  She screamed for her children to help her, causing the children to run outside and attack Officer Rumery-Taylor.  Two of the children were punching and kicking Officer Rumery-Taylor.  It took the help of three neighbors to finally control the children and get Plaintiff into the police cruiser.  Given the absolute chaos that broke out when Plaintiff called for her children, the fact that the children were attacking Officer Rumery-Taylor, and Plaintiff's continued resistance, Officer Rumery-Taylor was forced to act quickly to attempt to control Plaintiff and get her into the cruiser.  Officer Rumery-Taylor was dealing with an unruly, resisting suspect, all the while defending herself against the onslaught of kicks and punches from the children, in a location where her closest backup was approximately thirty minutes away.  Officer Rumery-Taylor used only the amount of force necessary to overcome Plaintiff's continued resistance, as Plaintiff was kicking and fighting the officer's attempt to control her and get her into the cruiser.

B. Qualified Immunity

In the alternative, Officer Rumery-Taylor contends that she is entitled to qualified immunity because  a reasonable police officer, when viewed objectively, could have concluded that the force used  during the struggle was lawful under the circumstances.  *Saucier v. Katz*, 53 U.S. 194 (2001); *see  also Illinois v. Lafayette*, 462 U.S. 640 (1983); *United States v. Martinez-Fuerte*, 428 U.S. 543  (1976). The finding of a constitutional violation satisfies only the first prong of the qualified immunity analysis. The court must then consider whether the unlawfulness of the police officer's act would have been apparent to a reasonable police officer, when viewed objectively. *Harlow v.*

*Fitzgerald*, 457 U.S. 800 (1982); *see also Anderson v. Creighton*, 43 U.S. 635 (1987). After finding that a constitutional right was violated, the court must find that the right was clearly established such that it would be clear to a reasonable officer that his conduct at that moment was unlawful under the circumstances he confronted. *Saucier v. Katz*, 533 U.S. 194-195 (2001); *Graham v. Connor*, 490 U.S. 386 (1989).  The Supreme Court recently explained that "[t]he dispositive question is whether the violative nature of *particular* conduct is clearly established . . ." and that the "inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition."  *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal citations and quotation marks omitted).  Furthermore, "qualified immunity protects actions in the hazy border between excessive and acceptable force."  *Id.* at 312 (internal citations and quotation marks omitted).

In exercising her judgment as to how best to take a hysterical and actively resisting subject into custody, while being attacked by Plaintiff's children, Officer Rumery-Taylor was not required to use the least intrusive or forceful means of doing so to preserve her immunity under § 1983 for a Fourth Amendment claim.  *Saucier v. Katz*, 53 U.S. 194 (2001); *see also Illinois v. Lafayette*, 462 U.S. 640 (1983); *United States v. Martinez-Fuerte*, 428 U.S. 543 (1976).  Even if Officer Rumery-Taylor was reasonably mistaken in the amount of force needed, she is still entitled to qualified immunity.  *See Roy v. Inhabitants of the City of Lewiston*, 42 F.3d 691, 695-96 (1st Cir. 1994) ("whether substantive liability or qualified immunity is at issue, the Supreme Court intends to surround the police who make these on-the-spot choices in dangerous situations with a fairly wide zone of protection in close cases.").

C. PUNITIVE DAMAGES

Plaintiff seeks punitive damages in this action. Punitive damages against individuals are only available in a § 1983 action "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). A case justifying the imposition of punitive damages requires proof of "physical abuse of such base, inhumane and barbaric proportions as to shock the sensibilities" such that a defendant can be said to have acted with "a callous indifference or a thoughtless disregard for the consequences of [his] act or failure to act…." *Id*. at 50-51.  Plaintiff alleges that her lower back and neck have been hurting severely since her arrest. However, Plaintiff's medical records do not support this claim and show that Plaintiff did not even seek treatment for these alleged injuries.  Photographs taken of Plaintiff during her booking show that Plaintiff only had a very minor scratch on her shin. An inadvertent injury suffered during this struggle, while regrettable, is no proof of the type of conduct for which punitive damages are recoverable under federal law.  Moreover, the alleged emotional trauma she has suffered from the arrest was self-inflicted and resulted from her overreaction, fleeing and  refusal to submit to being arrested.

### III. SUMMARY

Defendant Rumery-Taylor contends that the evidence to be produced by Plaintiff will be insufficient as a matter of law and fact to support a verdict against her, and in favor of Plaintiff.

Dated at Portland, Maine this 25th day of July, 2016

*/s/ Kasia S. Park*_____
Edward R. Benjamin, Jr.
Kasia S. Park
*Attorneys for Defendant*

DRUMMOND WOODSUM
84 Marginal Way, Suite 600
Portland, ME  04101
(207) 772-1941
ebenjamin@dwmlaw.com
kpark@dwmlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on July 25, 2016, I electronically filed Defendant Cynthia Rumery-Taylor's Trial Brief with the Clerk of the Court using the CM/ECF system, which will send notification of such filings to all counsel of record.

*/s/ Kasia S. Park_____*
Kasia S. Park
Attorney for Defendants
